**UNITED STATES of America, Plaintiff,**

v.

**Sam ANDERSON and Shawn Anderson, Defendants.**

No. CIV.A.2:04–0332–23BG.

United States District Court, D. South Carolina, Charleston Division.

Dec. 15, 2004.

John H. Douglas, US Attorneys Office, Charleston, SC, for Plaintiff.

Sam Anderson, N. Charleston, SC, Pro se.

Shawn Anderson, N. Charleston, SC, Pro se.

## *ORDER*

DUFFY, District Judge.

This matter is before the court upon the United States Magistrate Judge's recommendation that Plaintiff United States of America's Motion for Summary Judgement be granted. The record contains a report and recommendation of the magistrate ("the R&R"), which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Defendants Sam and Shawn Anderson have timely filed objections to the R&R.

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). Having reviewed the entire record, including Defendants' objections, the court concludes that the R&R accurately summarizes the facts and law applicable to this matter, and correctly

grants summary judgment to the Government. Defendants' objections are wholly without merit, and simply reiterate arguments made to, and rejected by, the Magistrate. For example, Defendants continue to argue that "[t]here is no statute imposing legal liability of income tax on the Defendants" and that principles of peonage and the 13th Amendment preclude a "forcible direct tax on the labor of a human being." (Obj. at 1, 3). Accordingly, the R&R is adopted in whole and incorporated into this Order, and the Government's motion for summary judgment is granted.

It is, therefore, **ORDERED**, for the foregoing reasons that Plaintiff United States of America's Motion for Summary Judgment is **GRANTED**. Judgment is hereby entered in favor of Plaintiff in the amount of $10,695.36, plus interest, penalties, and costs, accruing according to law from July 15, 2004 to the date of entry of judgment.

**AND IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

KOSKO, United States Magistrate Judge.

### I. INTRODUCTION

The United States of America, as Plaintiff ("Plaintiff"), brought this action pursuant to 26 U.S.C. § 7405 to recover a federal tax refund erroneously paid to the defendants, Sam Anderson and Shawn Anderson (collectively, the "Defendants"), who are residents of North Charleston, South Carolina.

Pursuant to the provisions of Title 28, United States Code Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), this case was referred to the undersigned United States Magistrate Judge to review the pleadings and submit findings and recommendations to the District Court, which has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a) and 7405.

### II. PRO SE STATUS OF DEFENDANTS

The Defendants are *pro se* litigants, and thus their pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite pleadings to include claims or defenses that never were presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir.1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986). Finally, the Court cannot ignore a clear failure in the pleading to allege facts supporting a claim or defense cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990).

### III. BACKGROUND

This case arises out of the investigation by the Internal Revenue Service ("IRS")

of the filing of fraudulent tax returns for trusts [1] as a vehicle for individual taxpayers to obtain, as tax refunds, their lifetime or annual social security earnings made to the Social Security Administration. Information available on the Internet advised individual taxpayers to file a United States Income Tax Return for Estates and Trusts ("Form 1041"), on which the individuals would list lifetime or annual social security taxes paid and request that those taxes be refunded.[2] The Criminal Investigation Division of the IRS identified over 7,000 participants who are involved in these filings, including the Defendants.[3]

On or about December 24, 1998, Defendants executed and filed with the IRS a Form SS–4, Application for Employer Identification Number ("EIN"), on behalf of a trust identified as the "Sam and Shawn Anderson Trust" (the "Trust"). On the Form SS–4, Defendants identified themselves as trustees of the Trust. On January 5, 1998, the IRS assigned EIN 57–6180278 to the Trust.

Also on or about December 24, 1998, Defendants executed and filed their IRS Form 1041, on behalf of the Trust, for the 1997 tax year.[4] On the Form 1041, the Defendants reported the following:[5]

| | |
|---|---|
| Total Income | $140,002.00 |
| Fiduciary Fees | $140,002.00 |
| Exemption | $ 7,950.00 |
| Taxable Income | $ (7,950.00) |
| Federal Income Tax Withheld | $ 41,786.00 |
| Overpayment | $ 41,786.00 |

The IRS received the Form 1041, and on February 9, 1999, issued a refund (the "Refund") [6] in the amount of $42,083.00 (which included $297.54 in interest) to the Trust. The check was endorsed by each of the Defendants. The check was paid by the United States Treasury on February 23, 1999.[7]

Thereafter, the IRS determined that the Refund was issued in error to the Trust.[8] Between August 2000 and August 2003, the IRS collected $36,415.56 from the Defendants in partial repayment of the Refund.[9]

## IV. PROCEDURAL HISTORY

On February 4, 2004, within five years of the payment of the Refund, the Plaintiff timely filed this action, pursuant to 26 U.S.C. 7405, to recover the Refund paid to Defendants. [1–1] Section 7405(b) of the Internal Revenue Code provides the Plaintiff with a civil cause of action to recover taxes "erroneously refunded." 26 U.S.C. S 7405(b); see, e.g., Hutchins v. Internal Revenue Service, 67 F.3d 40, 42 (3d Cir. 1995); Clark v. United States, 63 F.3d 83,

---

1. See Declaration of Pamela Snow, Collection Group Manager employed in the Small Business Self–Employed Division of the IRS (hereinafter "Snow Declaration") at ¶ 2, attached to Plaintiff's Motion for Summary Judgment. [11–1]

2. Snow Declaration at ¶ 3, attached to Plaintiff's Motion for Summary Judgment. [11–1]

3. Snow Declaration at ¶ 4, attached to Plaintiff's Motion for Summary Judgment. [11–1]

4. See Exhibit 2; Answer ¶ 5, attached to Plaintiff's Motion for Summary Judgment. [11–1]

5. See Exhibit 2, Answer ¶ 6, attached to Plaintiff's Motion for Summary Judgment. [11–1]

6. See Declaration of Joan K. Pelon, Tax Computation Specialist for the Internal Revenue Service (hereinafter "Pelon Declaration"), at ¶ 3, attached to Plaintiff's Motion for Summary Judgment. [11–1]

7. See Exhibit 3, attached to Plaintiff's Motion for Summary Judgment. [11–1]

8. Pelon Declaration at ¶ 4, attached to Plaintiff's Motion for Summary Judgment. [11–1]

9. Pelon Declaration at ¶ 5, attached to Plaintiff's Motion for Summary Judgment. [11–1]

87 (1st Cir.1995) (internal quotation omitted) ("taxpayers who receive erroneous refunds owe the IRS because they have been unjustly enriched"); *see also United States v. Russell Mfg. Co.*, 349 F.2d 13, 16 (2d Cir.1965) ("[an action by the government to recover a tax refund is an action for restitution]").

The Plaintiff alleged that Defendants had obtained the Refund fraudulently, by means of misrepresentation of material facts, and that the Trust was established for the purpose of obtaining a tax refund based on misrepresentations made on the Form 1041. Plaintiff further alleged that neither the Trust nor the Defendants had made income tax payments in any amount whatsoever. The Plaintiff alleged that the sum of $5,667.98, plus interest [10] from February 9, 1999 to the date of payment, was due and owing from the Defendants. Pursuant to 26 U.S.C. §§ 6602 and 6621, taking in to account the funds collected by the IRS, Plaintiff alleged that the Defendants owed the sum of $10,695.36 as of July 15, 2004, plus interest, penalties, and costs calculated to the date of entry of judgment.[11]

After the time for discovery had expired, the Plaintiff moved for summary judgment, contending, pursuant to 26 U.S.C. § 7405, that it was entitled to recover the Refund issued to the Defendants. [11–1] The Defendants, in turn, filed a memorandum opposing the Plaintiff's right to recover the Refund. [13–1]

### V. SUMMARY JUDGMENT STANDARD

The determination of a motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126 (4th Cir.1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a nonmoving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167 (4th Cir.1988).

### VI. ANALYSIS

The Plaintiff served interrogatories, requests for production, and requests for admissions on the Defendants in order to determine whether the Defendants' claims made on the Trust's Form 1041 could be substantiated. In response to the discovery requests, the Defendants admitted that the Trust was created for the purpose of obtaining a refund.[12] Defendants denied that the amounts on the Form 1041

---

**10.** Interest on the sum is authorized by, and calculated pursuant to 26 U.S.C. § 6602.

**11.** *See* Plaintiff's Motion for Summary Judgment [11–1] at p. 1; *see also* Pelon Declaration at ¶ 6.

**12.** *See* Exhibit 4 at ¶ 1; Exhibit 5 at ¶ 1; Exhibit 6, ¶ 2, attached to Plaintiff's Motion for Summary Judgment. [11–1]

were fabricated, but Defendants were not able to produce any documents to support any of the claimed items.[13]

From the undisputed facts before this Court, the Refund was issued pursuant to the Defendants' request as made on the Form 1041 they filed.[14] As shown in the chart set forth on page 3, *supra,* the Refund was issued as a result of the Defendants' representation that the Trust existed, that it had received income, that it was entitled to take a deduction for a fiduciary fee, that it was entitled to an exemption, and that it had paid $41,786.00 in 1997 based on tax withholdings.[15]

Courts have rejected attempts by taxpayers to use trusts to avoid the payment of income taxes or to obtain erroneous tax refunds. *See United States v. Krall,* 835 F.2d 711, 714 (8th Cir.1987); *United States v. Buttorff,* 761 F.2d 1056, 1060–61 (5th Cir.1985). In *Buttorff,* a promoter was enjoined from promoting a sham trust scheme where trust tax returns were prepared listing the individual taxpayers income and claiming deductions for fiduciary fees, resulting in no or negative taxable income. *Id.* Similar sham trusts have been used in other cases. *See, e.g., Holman v. United States* 728 F.2d 462 (10th Cir.1984). The tax return filed by the Defendants in the present case, which claimed a fiduciary expense exactly equal to the amount of income, resulting in a refund of all tax alleged to be withheld from the Defendants is similar to the trusts used in those other schemes.

In the present case, it is not disputed that the IRS issued the Refund to the Defendants and that the Refund was made in error. Indeed, as the Defendants admit, the Trust was created for the purpose of obtaining a tax refund.[16] Although Defendants claim that they acted in good faith, the Defendants have failed to produce any evidence whatsoever to support an allegation that they were entitled to the Refund that they had requested on the Form 1041. Instead, Defendants merely purport to "leave[ ] Plaintiff to his proof."[17]

Nevertheless, a party seeking to avoid the entry of summary judgment must make a sufficient showing to establish a dispute as to a material fact. The Defendants have failed to produce any evidence during discovery to support the claim that they were entitled to the Refund set forth on their Form 1041, and it appears that no such documents exist. Therefore, summary judgment in favor of the United States is warranted so that the refund may be recovered.

On February 9, 1999, the IRS issued the Defendants a refund in the amount of $42,083.54, based on the false Form 1041 filed by Defendants. Since the time that the Refund was paid, the Defendants have repaid a portion of that money to the Plaintiff. After payments and other credits, as of July 15, 2004, the Defendants are indebted to the Plaintiff for the amount of $10,695.36,[18] plus interest, penalties, and

**13.** *See* Exhibit 4 at ¶ 1; Exhibit 5 at ¶ 1; Exhibit 6, ¶ 2; Exhibit 7, ¶ 4, ¶¶ 6–8; Exhibit 8, ¶ 4, ¶¶ 6–8; Exhibit 9, ¶¶ 3, 5 (with Forms 1040 referred to in response to request for production), all attached to Plaintiff's Motion for Summary Judgment. [11–1]

**14.** *See* Exhibit 2, attached to Plaintiff's Motion for Summary Judgment. [11–1]

**15.** *See* Exhibit 2, attached to Plaintiff's Motion for Summary Judgment. [11–1]

**16.** *See* "Defendants Answering the Request of Admission" at ¶ 3, attached to Defendants' Opposition to Summary Judgment. [13–1]

**17.** *See* "Defendants Answering the Request of Admission" at ¶ 7, attached to Defendants' Opposition to Summary Judgment. [13–1]

**18.** *See* Pelon Declaration at ¶ 6, attached to Plaintiff's Motion for Summary Judgment. [11–1]

costs, accruing according to law from July 15, 2004, to the date of entry of judgment.

### RECOMMENDATION

Based upon the foregoing, it is recommended that Plaintiff's Motion for Summary Judgment **[11–1] should be granted.**

### *Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So*

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed.R.Civ.P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed.R.Civ.P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. *Advance Coating Technology, Inc. v. LEP Chemical, Ltd.,* 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y.1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See Mathews v. Weber,* 423 U.S. 261, 270–271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); and *Estrada v. Witkowski,* 816 F.Supp. 408, 410 (D.S.C.1993).

During the period for filing objections, *but not thereafter,* a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See Keeler v. Pea,* 782 F.Supp. 42, 43–44 (D.S.C.1992); and *Oliverson v. West Valley City,* 875 F.Supp. 1465, 1467 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See United States v. Schronce,* 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied, Schronce v. United States,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984); and *Wright v. Collins,* 766 F.2d 841, 845–847 & nn. 1–3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *Howard v. Secretary of HHS,* 932 F.2d 505, 508–509 (6th Cir.1991). *See also Praylow v. Martin,* 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466 (1985). In *Howard, supra,* the Court stated that general, not—specific objections are *not* sufficient:

**A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and**

runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord Lockert v. Faulkner,* 843 F.2d 1015, 1017–1019 (7th Cir.1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also Branch v. Martin,* 886 F.2d 1043, 1046 (8th Cir.1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and *Goney v. Clark,* 749 F.2d 5, 7 n. 1 (3rd Cir.1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. *See Wright v. Collins, supra;* and *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2nd Cir.1989). Filing by mail pursuant to Fed. R.Civ.P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk

United States District Court

Post Office Box 835

Charleston, South Carolina 29402

Sept. 29, 2004.